# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

**DARRELL J. LAKE,**

           **Plaintiff,**

      **-vs-**                     **Case No.    02-C-0964**

**JON E. LITSCHER, SHARON K. ZUNKER,**
**THOMAS BORGEN, PATRICIA GARRO,**
**KEVIN GOGGINS, BRIAN SCHUELER,**
**KELLY SANDERS, DR. LUY,**
**SHARI HEINZ, JANET BLOEDOW,**
**MELVIN PULVER, MARY NEUMAN,**
**SUE BURNETT, TOM GAZINSKI,**
**KAREN GOURLIE, CAPT. McCLELLAND, and**
**LT. BALDUS,**

           **Defendants.**
_____

## DECISION AND ORDER
_____

      Plaintiff Darrell J. Lake, a state prisoner at all times relevant, filed this *pro se*

civil rights complaint pursuant to 42 U.S.C. § 1983. He is proceeding *in forma pauperis*

on his Eighth Amendment medical care and conditions of confinement claims. Currently

pending is the defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

      On September 27, 2002, the plaintiff lodged a civil rights complaint against Jon

E. Litscher, Sharon K. Zunker, Thomas Borgen, Patricia Garro, Kevin Goggins, Brian

Schueler, Kelly Sanders, Dr. Luy, Shari Heinz, Janet Bloedow, Melvin Pulver, Mary Neuman,

Sue Burnett, Tom Gazinski, Karen Gourlie, Capt. McClelland, and Lt. Baldus. The plaintiff

filed an amended complaint on October 31, 2002. The court subsequently screened the

amended complaint and allowed the plaintiff to proceed on Eighth Amendment medical care and conditions of confinement claims.

On January 15, 2003, the plaintiff filed a motion for summary judgment. By order of August 28, 2003, the court denied the plaintiff's motion and dismissed the official capacity claims against all defendants. Then, on December 19, 2003, the defendants filed a motion for summary judgment. On September 3, 2004, the defendants' motion was granted in part and denied in part. Specifically, the plaintiff's claims that he was punished for behavior caused by the side effects of his Hepatitis C treatment and his claim that he was denied adequate medical care for Hepatitis C were dismissed. However, the court allowed the plaintiff to proceed on claims that he was denied proper care for medical problems other than Hepatitis C and that he was subjected to conditions of confinement depriving him of basic human needs when he was sentenced to adjustment segregation.

On December 6, 2004, the court granted the plaintiff's motion to appoint counsel after determining that the presence of an attorney was likely to make a difference in the outcome of the case. Attorneys Charles H. Bohl and Eric J. Meier of the law firm Whyte Hirschboeck Dudek S.C., Milwaukee, Wisconsin, agreed to undertake representation of the plaintiff on a *pro bono* basis. The court set March 24, 2006 as the deadline for dispositive motions and scheduled trial to begin August 28, 2006.

On September 2, 2005, the plaintiff filed a motion for reconsideration of the court's September 3, 2004, order granting in part and denying part the defendants' motion for

2

summary judgment.  The plaintiff's motion for reconsideration was denied on September 23, 2005.  The defendants filed this motion for summary judgment on March 23, 2006.

## A.  Standard of Review

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party."  *Id*.  For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit."  *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255.  When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law.  *Celotex Corp*., 477 U.S. at 323.  Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the

3

nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

The defendants have asked the court to disregard information presented in the plaintiff's response to the defendants' motion for summary judgment. In particular, the defendants contend that the plaintiff has submitted information beyond that which he presented in his complaint, amended complaint, March 24, 2003 affidavit, and December 5, 2002 motion for summary judgment. The defendants submit that they relied on the plaintiff's complaint, amended complaint, affidavit and summary judgment motion when preparing their motion for summary judgment and that if the court considers any new information the defendants will be deprived due process. In response to the defendants'

4

motion for summary judgment, the plaintiff submitted two sworn "declarations" and nineteen exhibits labeled Exhibits A through S. (*See* Plaintiff's Response to Defendants' Motion for Summary Judgment, Declaration of Eric J. Meier [Meier Declaration] and Affidavit of Darrell J. Lake [Lake Declaration]). The defendants have not cited any legal authority in support of their proposition. Nor have they addressed Civil L.R. 56.2 (E.D. Wis.), which provides that a non-movant may include in his response affidavits showing that there is a genuine issue of material fact. Regardless, the defendants' request should be denied for other reasons.

First, the plaintiff's Exhibits A through P are already part of the record since they were filed with the plaintiff's December 5, 2002, motion for summary judgment. (*See* Affidavit of Eric Meier [Meier Aff.] Exhs. A - P; Plaintiff's Motion for Summary Judgment Attachments 1-219). Second, although Exhibits Q, R, and S were not filed with the court prior to the plaintiff's April 24, 2006, response to the defendants' motion for summary judgment, the defendants could have responded to this information in their reply brief. *See* Civil L.R. 56.2(b)(2). Based on the foregoing, the court is not persuaded that the defendants will be prejudiced if the court considers the sworn declarations and exhibits attached to the plaintiff's response to the defendants' motion for summary judgment. Accordingly, the defendants' request to disregard these materials is denied.

Case 2:02-cv-00964-RTR   Filed 07/31/06   Page 5 of 22   Document 197

**B. Relevant Undisputed Facts**

The relevant facts are based upon the defendants' proposed findings of fact and affidavits to the extent they are undisputed, and the plaintiff's proposed findings of fact and affidavits to the extent such factual propositions are undisputed. *See* Civ. L.R. 56.2 (E.D. Wis.). As noted in this court's order of September 3, 2004, the plaintiffs' claims that he was punished for behavior caused by the side effects of his Hepatitis C treatment and that he was denied adequate medical care for Hepatitis C are dismissed. Thus, the issues currently before the court are: (1) whether the defendants failed to provide the plaintiff adequate medical care based on medical conditions other than Hepatitis; and (2) whether the plaintiff was punished in a manner depriving him of basic human needs during his adjustment segregation sentence. Any facts not relevant to a determination of these two questions have been omitted.

**Medical Care**

The plaintiff, who was incarcerated at Fox Lake Correctional Facility (FLCI) at all times relevant, has Hepatitis C. (Amended Complaint ¶1; Affidavit of Paulette Sanders [Sanders Aff.] ¶26). From approximately February through September 2002, the plaintiff's Hepatitis C was treated with pegylated interferon and ribavarin combination therapy. (Affidavit of David Burnett [Burnett Aff.] ¶13).[1] Common side effects of this

---

[1] The parties are in dispute as to whether the plaintiff's Hepatitis C treatment ended in September, 2002 or January, 2003. (See Defendants' Proposed Findings of Fact P5; Plaintiff's Proposed Findings of Fact P1). However, as will be discussed herein, this dispute is not material.

6

treatment include: nausea, insomnia, loss of appetite, irritability, depression, bone and joint pain, fatigue, memory loss, forgetfulness, diarrhea, and emotional and behavioral symptoms. (August 10, 2005 Deposition of Gail Patrice Kennedy, NR [Kennedy Deposition] at 15-18). Less common side effects include open sores that bleed and excrete bodily fluids. *Id*.

The plaintiff was apprised of the side effects of pegylated interferon and ribavarin combination therapy prior to receiving the treatment. (Burnett Aff. ¶¶15-16). He indicated his consent to treatment by signing a Hepatitis C Treatment Consent form. *Id*. The plaintiff could have stopped his Hepatitis C treatment at any time. *Id*.

Sue McMurry, who is a nurse at FLCI, treated the plaintiff throughout the course of his Hepatitis C treatment. (Burnett Aff. Exh. E). McMurry examined the plaintiff on February 8, 2002, February 23, 2002, April 11, 2002, May 24, 2002, June 13, 2002, August 14, 2002, September 4, 2002, and September 26, 2002. *Id*. At each of these appointments, McMurry took the plaintiff's vital signs, checked his blood, determined if the plaintiff was complying with the medication regimen, and checked for any side effects or symptoms including flu-like symptoms, fatigue, rash, irritability, and depression. *Id*.

In addition to his regular visits with McMurry, the plaintiff was seen in the HSU on the following dates between February and September, 2002: February 26, 2002, March 2, 2002, March 3, 2002, March 5, 2002, March 7, 2002, March 11, 2002, March 19, 2002, April 1, 2002, April 18, 2002, April 22, 2002, May 22, 2002, June 4, 2002, June 19,

2002, June 20, 2002, July 1, 2002, July 14, 2002, July 30, 2002, August 26, 2002, and August 29, 2002. (Sahar Aff. Exh. F). At these visits, the plaintiff was given Tylenol 3, ibuprofen and cream to treat the side effects of his Hepatitis C treatment. *Id*.

The plaintiff filed requests for medical treatment from the HSU on July 28, 2002, August 21, 2002, and August 25, 2002. (Meier Aff. Exh. P). On July 28, 2002, the plaintiff filed a Health Services Request form, stating that he had "severe skin loss or sore[s] in [his] butt crack and anus." *Id.* He complained that the sores were bleeding and burned severely. *Id.* He also stated that he had sores and bruising all over his body. *Id.* On July 30, 2002, the plaintiff was treated in the HSU for a red anus, cracking and open areas on his groin and foot, and dry and itchy skin. (Sahar Aff. Exh. F). He was given a cream to apply to the affected areas. *Id.*

On August 21, 2002, the plaintiff filed a Medical/Nursing Services Request form, complaining that he had infected sores scattered over his body. (Meier Aff. Exh. P). He stated that the sores were "seeping puss and blood" and "hurt very much." *Id.* On August 21, and August 25, 2002, the plaintiff filed Medical/Nursing Services Request forms, stating that he was suffering bone, muscle and joint pain. *Id.* He asserted that the Tylenol 3 he was taking was not helping and he requested another type of painkiller. *Id.* The plaintiff was seen in the HSU on August 26 and August 29, 2002, for body sores, an abrasion-like sore on his elbow, scabbed over areas, an infected third finger and bone pain. (Sahar Aff. Exh. F). He was treated with band-aids and Epsom salts. *Id.*

8

During his incarceration, the plaintiff shared a cell with inmates Daniel Howell, Gary Andresko and Donny Pupp. (Meier Aff. Exhs. A, B, & O). Howell, Adresko and Pupp knew that the plaintiff had Hepatitis C. *Id.* They all saw that he experienced bloody, pussy sores as a result of his Hepatitis C treatment. *Id.*

### Conditions of Confinement

From March 2 to March 3, 2002, the plaintiff was placed in observation status because he told the prison staff that he was suffering from depression. (Sanders Aff. Exh. 58). Upon arrival at the observation unit, the security staff removed the plaintiff's regular clothes and dressed him in a gown made of fabric like a softener sheet. (Deposition of Darrell L. Lake [Lake Deposition] at 59). In addition, the plaintiff was dressed in a sleeveless denim "turtle suit" that went down to his waist. *Id.* The observation cells at FLCI are made entirely of windows so that inmates can be observed at all times. *Id.* at 57-58. The temperature in the segregation building at Fox Lake Correctional Institution is always kept between 68 and 72 degrees during the winter months. (Affidavit of James Johnson [Johnson Aff.] ¶3).

On July 4, 2002, the plaintiff was issued Conduct Report 1400956 for violating Wis. Admin. Code DOC §§ 303.24 (disobeying orders) and 303.63 (violation of institution policies and procedures). (Sanders Aff. ¶44). On July 18, 2002, the plaintiff had a full due process hearing. *Id.* Defendant Pulver, the hearing officer, found the plaintiff

9

guilty on both counts and sentenced him to a total of nine days in adjustment segregation. *Id.*

The plaintiff served his adjustment segregation sentence from July 18 to July 27, 2002. *Id.* He was escorted to the adjustment segregation unit by Capt. Patricia Garro. (Lake Declaration ¶11). The plaintiff's medical records indicate that the plaintiff was not treated in the HSU from July 18 to July 27, 2002. (Sahar Aff. Exh. E).

The FLCI Segregation Handbook provides:

> exercise will be provided to inmates five times per week, if possible. Each exercise period will be approximately one hour in length, if possible. Exercise will be conducted seven days per week in order to provide each inmate with the opportunity to exercise five times weekly.

(Sahar Aff. Exh. K). The segregation cells measure 10 feet 10 ½ inches by 7 feet 7 ½ inches. (Affidavit of Marsha Mulligan [Mulligan Aff.] ¶2). The cells in the segregation unit are not air conditioned. (Mulligan Aff. ¶3).

On June 11, 2002, the plaintiff wrote to warden Borgen asking him to set up a meeting with Sue McMurry to discuss the plaintiff's medical care. (Meier Aff. EXh. H). The plaintiff stated that he had been sent to segregation on June 6, 2002 for failing to sign into his unit, and that such punishment was due to "the side effect (sic) of [his] treatment for Hepatitis C and beyonf [his] ability to control." *Id.* Further, the plaintiff indicated that he had initiated a civil suit against FLCI. *Id.* In his response of June 21, 2002, Borgen

10

stated that the HSU director seriously considers all medical inquiries and that she had the best interests of the plaintiff in mind. *Id.*

On August 16, 2002, the plaintiff filed an inmate complaint, complaining that Nurse McMurry gave him cream for his "severe skin loss and bleeding in the crack of [his] butt," without examining him. (Meier Aff. Exh. E). The plaintiff also asserted that he then sent to the hole where he suffered severe physical and psychological pain. *Id.*

## II. DISCUSSION

### A. Medical Care Claims

As a preliminary matter, the defendants contend that the side effects the plaintiff suffered were not independent of the Hepatitis C disease. The defendants have submitted no medical evidence in support of their proposition[2]. Thus, at this point, the court is not convinced that the care the defendants provided to the plaintiff to treat his side effects was constitutionally adequate. Therefore, the court will address the plaintiff's contention that the defendants failed to provide him adequate medical care for the side effects of his Hepatitis C treatment.

The plaintiff claims that from July 18 to July 27, 2002, the defendants ignored his complaints that he was bleeding from his rectum and had open sores all over

---

[2] Although the defendants have cited the plaintiff's deposition in support of their claim that the Hepatitis C side effects were not independent of the Hepatitis C treatment, the plaintiff's testimony as to whether he suffered a condition independent from Hepatitis C is far from unequivocal. *(See* Defendants' Brief in Support of Their Motion for Summary Judgment at 6-8).

his body. In response, the defendants contend that the plaintiff was provided with medical care and that the plaintiff has exaggerated the extent of the side effects of his Hepatitis C treatment. To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

12

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42)

Here, it is undisputed that the plaintiff experienced numerous side effects from his Hepatitis C treatment. Specifically, his medical records reveal that he suffered joint pain, extreme fatigue, intermittent diarrhea, anxiousness and paranoia, irritability, depression, bleeding and pussy sores, and dry, cracked skin. Nurse McMurry was aware of these side effects. Between February and September, 2002, the plaintiff was seen at the HSU on an almost weekly basis. In addition to the medicine the plaintiff was given to treat Hepatitis C, the plaintiff was given cream for his dry and cracked skin, ibuprofen and Tylenol 3 for his muscle, bone and joint pain, and Empson salts and band-aids to treat an infected finger.

In addition to these visits to the HSU, the plaintiff filled out three forms requesting treatment for the side effects of his Hepatitis C treatment. He complained that

13

he had sores, a red anus and severe bone, joint and muscle pain. For treatment, he was given cream and Tylenol 3. On all three occasions, the plaintiff received treatment within four days of filing his request. During the plaintiff's nine day adjustment segregation sentence, the plaintiff was not treated in the HSU.

As with an Eighth Amendment claim based on the conditions of confinement where a court must examine the totality of the conditions, *see DeMallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988), a court must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs. *Gutierrez*, 111 F.3d 1375. Upon careful review of the facts presented by the plaintiff, particularly his detailed account of the frequency and amount of care he received for the side effects of his Hepatitis C treatment, it is clear that the plaintiff's nine day denial of medical care was simply an isolated instance of neglect, which taken alone or collectively cannot support a finding of deliberate indifference. "A finding that a defendant's neglect of a prisoner's condition was an 'isolated occurrence,'...or an 'isolated exception' to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 [9th Cir. 1992]).

The present case is analogous to *Gutierrez*, where the inmate alleged that on three occasions the defendants delayed providing him medical care for a pilodinal cyst on his back. The prisoner contended that the delays, which ranged from six to fourteen days

14

in length and occurred over a ten-month period during which the plaintiff otherwise received prompt and comprehensive treatment, caused the cyst to become infected and ultimately burst. The Court of Appeals for the Seventh Circuit held that the three isolated delays failed to satisfy the deliberate indifference prong and affirmed the district court's entry of judgment on the pleadings in the defendants' favor.

Similarly, the plaintiff in this case regularly received prompt medical care for seven months. A nine day delay of medical care in the midst of an otherwise adequate course of intensive treatment does not implicate the constitution. Moreover, "an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)). The plaintiff has presented no evidence that the delay in his treatment had any detrimental effect.

The plaintiff also asserts that he was not allowed to go to HSU for three days after he was released from adjustment segregation. Notably, the plaintiff has submitted no admissible evidence in support of his proposition. At the summary judgment stage, neither party may rest on mere allegations in the pleadings, *Anderson*, 477 U.S. at 248, or upon such conclusory statements in affidavits. *Palucki,* 879 F.2d at 1572.

The plaintiff further avers that warden Borgen did nothing to ensure that the plaintiff was being provided prompt medical attention. It is unclear how Borgen, as a

15

non-medical prison official, was responsible for providing the plaintiff with medical care. While it is true that the plaintiff wrote Borgen to inform him of his medical condition, the plaintiff was receiving care from the HSU. "A non-medical prison official cannot be held deliberately indifferent to simply because he failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006).

Next, the plaintiff contends that his fellow inmates can attest to the fact that he suffered bloody and pussy sores as a side effect of his Hepatitis C treatment and that his requests for medical care were ignored. It is undisputed that sores are a common side effect of pegylated interferon and ribavarin combination therapy. To the extent the plaintiff's cell mates disagree with the medical care the plaintiff received for his sores, a disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle,* 429 U.S. at104-05; *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Finally, the plaintiff asserts that when his finger began bleeding during a meeting with defendant Bloedow, she did not immediately clean up the blood spill. In addition, Bloedow did not document the incident. The court can conceive of no situation where these facts, even if true, would violate the plaintiff's right to be free from cruel and unusual punishment. Based on the foregoing, the plaintiff has failed to establish an

16

Eighth Amendment violation and the defendants' motion for summary judgment will be granted as to this claim.

## B. Conditions of Confinement Claims

The plaintiff alleges that the defendants violated his rights under the Eighth Amendment when they: (1) sentenced the plaintiff to adjustment segregation without exercise; (2) subjected the plaintiff to extreme temperatures; and (3) failed to provide him with a clean mattress after he got blood and puss all over his bed. In response, the defendants contend that the plaintiff was permitted to exercise outside his cell, that his cell was large enough to exercise in, he has failed to show that he was subjected to extreme temperatures, and he did not get blood and puss on his mattress. To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer,* 511 U.S. at 834. An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Prison conditions cannot rise to the level of cruel and unusual punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304. Mechanical rules are not to be

17

employed in determining whether an alleged deprivation violates the Eighth Amendment. *Rhodes*, 452 U.S. at 346-47 (1981).

### 1. Denial of Exercise

The plaintiff claims that he was prevented from exercising while he was in adjustment segregation. The Seventh Circuit has recognized that a lack of exercise can rise to a constitutional violation, *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1986), and that "exercise is now regarded in many quarters as an indispensable component of preventative medicine." *Anderson v. Romero*, 72 F.2d 518, 528 (7th Cir. 1995). However, short term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997)(70 day denial of exercise permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988)(28 day denial of exercise not deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir. 1986)(limited recreational activities sufficient where average prison stay was 10 days or less); but see *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)(viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989)(reversing summary judgment for prison officials where segregated prisoner was denied exercise for 101 days).

Here, it is undisputed the plaintiff was in adjustment segregation from July 18 to July 27, 2002. According to the FLCI segregation handbook, inmates in adjustment

18

segregation were permitted to exercise outside of their cell five times per week. The cells in segregation measure 10 feet 1 ½ inches by 7 feet 6 ½ inches.

The plaintiff has submitted no evidence to refute the defendants' contentions. Specifically, he has not explained why his cell was too small to exercise in. Nor has he addressed the defendants' contention that the FLCI handbook explicitly states that he should have been permitted to exercise five times per week. At this stage of the proceedings, the plaintiff is required to "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Celotex Corp., 477 U.S.* at 323-24. This he has not done.

### 2. Extreme Temperatures

The plaintiff submits that he was subjected to extreme cold and heat. As discussed, prisoners are entitled to "the minimal civilized measure of life's necessities." *Dixon*, 114 F.3d at 642. This includes a right to protection from extreme heat and cold. *Shelby County Jail Inmates,* 798 F.2d at 1087. Courts should examine several factors in assessing claims based on extreme temperatures, such as the severity of the temperature, its duration, whether the prisoner has alternative means to protect himself from the extreme temperature, the adequacy of such alternatives, and whether he must endure other uncomfortable conditions in addition to the extreme temperatures. *Dixon*, 114 F.3d at 644. In certain circumstances, extreme hot or cold temperatures may constitute violations of the Eighth Amendment. *Id.*

19

First, the plaintiff contends that he was left naked in a cold cell without a blanket. It is undisputed that the plaintiff was in observation status from March 2 to March 3, 2002. He was dressed in a light gown and a denim "turtle suit" for his own protection. The plaintiff's cell was made entirely of windows so that the plaintiff could be observed at all times. During the winter months, the temperature at FLCI is kept between 68 and 72 degrees.

The plaintiff describes the temperature in the observation cell as "extremely cold." However, he has submitted no evidence to refute the defendants' contention that his cell was kept between 68 and 72 degrees. At most, the plaintiff has established that he was uncomfortable. However, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obligated to provide constitutionally adequate confinement." *Harris,* 839 F.2d at 1235-36.

The plaintiff also asserts that he was denied a blanket while he was in observation status. Although a deprivation of clothing and bedding may rise to the level of a constitutional violation in cases where an inmate has been subjected to extreme cold, *Murphy v. Walker,* 51 F.3d 714, 720-21 (7th Cir. 1995)(allegation that the inmate was confined to a cold cell without clothes, bedding or heat in mid-November sufficient to proceed on Eighth Amendment claim), the plaintiff here was provided with clothes and he has not demonstrated that he was subjected to excessively cold temperatures.

20

Second, the plaintiff avers that from July 18 to July 27, 2002, the temperature in his cell was in the 100 degree range. It is undisputed that there is no air conditioning in the cells at FLCI. However, the plaintiff has submitted no admissible evidence that the temperature in his cell reached or exceeded 100 degrees for the nine days he was in adjustment segregation. At this point, his allegation that he was subjected to extreme heat during his adjustment segregation sentence is just that, an allegation. "It is well established that conclusory allegations...without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)(citing *Patterson v. Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 724 [7th Cir. 1998]).

### 3. Denial of Clean Mattress

The plaintiff contends that while he was in adjustment segregation, he was forced to sleep on a mattress soaked in blood, puss and sweat. The defendants assert that the plaintiff has exaggerated the extent of his medical condition and that he did not have blood and puss all over his mattress. It is undisputed that the plaintiff was in adjustment segregation for nine days. During this time, he did not file an inmate complaint that he was denied a mattress. Furthermore, when the plaintiff filed his August 16, 2002 grievance complaining about his segregation sentence, he did not indicate that he was denied a clean mattress.

Inmates have a constitutional right to sanitary conditions in their prison cells. *See Rhodes*, 452 U.S. 347. However, the plaintiff has submitted no proof that the conditions

21

in his cell were not sanitary. Further, the plaintiff has not presented any documentation of his efforts to alert the defendants to the conditions in his cell. Finally, the plaintiff has failed to address the defendants' contention that he exaggerated the extent of his medical condition. Once a moving party's burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action. *Celotex Corp.*, 477 U.S. at 323-24. Neither party may rest of allegations in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits. *Palucki*, 879 F.2d at 1572. In light of the foregoing, the plaintiff has failed to establish that a genuine issue of material fact exists and the defendant's motion for summary judgment on the plaintiff's conditions of confinement claim will be granted.

## ORDER

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Doc. #164) is **granted.** This case is dismissed and the Clerk of Court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2006.

**SO ORDERED,**


s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA**
**Chief Judge**

22